# In the United States Court of Federal Claims

No. 21-1937V
(Filed Under Seal: August 19, 2026)
(Reissued: September 14, 2026)*
**FOR PUBLICATION**

| | |
|---|---|
| MICHAEL JOHNSON, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

*Mark T. Sadaka*, Sadaka Associates LLC, Englewood, NJ, for Petitioner.

*Michael S. Bliley*, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. Also on the briefs were *Brett A. Shumate*, Assistant Attorney General, *Jonathan D. Guynn*, Acting Director, *Heather L. Pearlman*, Deputy Director, and *James V. Lopez*, Assistant Director, Torts Branch, Civil Division, United States Department of Justice.

## OPINION AND ORDER

Petitioner Michael Johnson sought relief under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 to 34 ("Vaccine Act"). He claims that a flu vaccine caused him to develop an autoimmune disorder. *See* Pet. ¶ 19 (ECF 1). The Chief Special Master denied Petitioner's claim, finding that he failed to carry his burden to show that the vaccine was the likely cause of the autoimmune disorder. *See* Entitlement Decision at 25 (ECF 72) ("Decision"). Petitioner seeks review. *See* Mot. for Review (ECF 74) ("Pet.'s Mot."); Resp. (ECF 77). I found it unnecessary to hold a

* This Opinion was issued under seal on August 19, 2026. The parties were directed to propose redactions by September 2, 2026. No proposed redactions were submitted. The Court hereby releases publicly the Opinion and Order in full.

hearing. Because the Chief Special Master did not abuse his discretion, the motion for review is **DENIED**.[1]

## BACKGROUND

### I. The Vaccine Act

To obtain compensation under the Vaccine Act, a petitioner must prove that a vaccine caused an injury. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). There are two ways to show that a vaccine caused a given medical condition: (1) through "a statutorily-prescribed presumption of causation upon a showing that the injury falls under the Vaccine Injury Table ('Table injury')," *id.* (citing 42 U.S.C. § 300aa-14(a)), or (2) by establishing causation in fact "where the complained-of injury is not listed in the Vaccine Injury Table ('off-Table injury')," *id.* (citing 42 U.S.C. §§ 300aa-13(a)(1), 300aa-11(c)(1)(C)(ii)(I)).

Petitioner alleges that he developed autoimmune hemolytic anemia ("AIHA") because of a flu vaccine. Pet. ¶ 19. AIHA is not a Table injury for flu vaccines, *see* 42 C.F.R. § 100.3(a)(xiv), and the parties agree that this is an "off-Table" case. *See* Pet.'s Mot. at 2–3; Resp. at 5; *see also* Pet.'s Br. in Support of Vaccine Causation at 5–6 (ECF 68).

In an off-Table case, a petitioner must prove causation-in-fact by a preponderance of the evidence. *See, e.g.*, *Hibbard v. Sec'y of Health & Hum. Servs.*, 698 F.3d 1355, 1366 (Fed. Cir. 2012) (citing *Althen*, 418 F.3d at 1278). Causation of off-Table injuries has three elements, often referred to as the *Althen* prongs: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278. A petitioner must prove each of the *Althen* prongs to successfully establish causation-in-fact. *Cerrone v. Sec'y of Health & Hum. Servs.*, 146 F.4th 1113, 1120 (Fed. Cir. 2025) (citing *Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1355 (Fed. Cir. 2019), and *Oliver v. Sec'y of Health & Hum. Servs.*, 900 F.3d 1357, 1361 (Fed. Cir. 2018)). The first and third prongs are the ones most relevant in this case.

To carry his burden under *Althen* prong one, a petitioner does not have to prove that his theory of injury is "medically or scientifically certain." *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) (quoting *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548–49 (Fed. Cir. 1994)). Still, he must

[1] This Court has jurisdiction. *See* 42 U.S.C. §§ 300aa-11(a), 300aa-16(a). Petitioner timely moved for review. *See* 42 U.S.C. § 300aa-12(e)(1).

"provide a reputable medical or scientific explanation" sufficient to satisfy the preponderant standard required in an *Althen* analysis. *Broekelschen*, 618 F.3d at 1345; *see also Boatmon*, 941 F.3d at 1355. As the Federal Circuit has summarized, "the first *Althen* factor requires the petitioner to show a reliable medical theory of causation specific to the vaccine and injury in question, not merely one that is plausible." *Cerrone*, 146 F.4th at 1121 n.3; *see also Munoz v. Sec'y of Health & Hum. Servs.*, 174 Fed. Cl. 276, 285 (2024), *aff'd,* No. 2025-1409, 2026 WL 1326559 (Fed. Cir. May 13, 2026).[2]

The third *Althen* prong requires a petitioner to demonstrate that his alleged injury occurred within a "medically acceptable" time period after vaccination. *See de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008) (citing *Althen*, 418 F.3d at 1281). "[T]he absence of temporal association can be enough to defeat a claim of causation." *Cerrone*, 146 F.4th at 1122 (citing *Pafford v. Sec'y of Health & Hum. Servs.*, 451 F.3d 1352, 1356, 1358 (Fed. Cir. 2006)). A petitioner can fail to establish a temporal link between a vaccination and an alleged injury if the onset of his symptoms occurs too early to be attributable to the vaccination, *see de Bazan*, 539 F.3d at 1352, 1353, or if the onset occurs too late, *see Pafford*, 451 F.3d at 1358.

This Court may set aside a special master's conclusions as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). "Fact findings are reviewed ... under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). When this Court finds error, it may either substitute its own findings and conclusions or remand for additional proceedings. 42 U.S.C. § 300aa-12(e)(2)(B)–(C). But when "the special master's findings of fact are supported by substantial evidence," they must be upheld. *Doe ex rel. Doe v. Sec'y of Health & Hum. Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010). That standard — which includes special masters' interpretations of expert opinion — is "well understood to be the most deferential possible." *Munn*, 970 F.2d at 870.

[2] Before the Federal Circuit's decision in *Cerrone*, this Court had sometimes required only that petitioners provide preponderant evidence for a "biologically plausible theory" of injury. *See, e.g.*, *Hoffman v. Sec'y of Health & Hum. Servs.*, 172 Fed. Cl. 477, 495 (2024). To the extent that such cases are inconsistent with the Federal Circuit's later decision in *Cerrone* — which requires "a reliable medical theory of causation … not merely one that is plausible," *see* 146 F.4th at 1121 n.3 — they have been abrogated.

## II. Procedural and Factual History

Petitioner received a flu vaccine on October 28, 2020. Pet. at 1. Several days later, on November 2, 2020, he went to urgent care complaining of symptoms including chills, hand tingling, chest tightness, body aches, and fatigue. Pet. ¶ 4. His urgent care intake records reflected that his symptoms appeared five days earlier, the same day as his flu vaccine. Ex. 1 at 2 (ECF 6-1). Blood tests administered at the urgent care visit yielded abnormal results. *See id.* at 5–7. After further evaluations, Petitioner was diagnosed with AIHA. Pet. ¶ 8.

Petitioner alleges that he developed AIHA because of the flu vaccine. Pet. at 1. To support his claim, Petitioner obtained expert reports from Dr. Clinton Merrill, a hematologist and oncologist. *See* Independent Review of Medical Records (ECF 37-1); Rebuttal Report to Expert Witness for the Defense (ECF 45-1).

The Chief Special Master set an entitlement hearing for March 2025. *See* Order (ECF 47). About a month before the hearing, Petitioner informed the Chief Special Master that Dr. Merrill had decided "to no longer participate in the Vaccine Program" and would not be available to testify. *See* Status Report (ECF 65). Petitioner noted that he had retained a new expert and would require at least sixty days to prepare a new expert report. *Id.*

After a status conference with the parties, the Chief Special Master cancelled the entitlement hearing. *See* Order of Feb. 26, 2025 (Non-PDF). He offered the parties a choice to reschedule the hearing between September 2025 and March 2026 or to proceed on the paper record without a hearing. *Id.* A joint status report filed by Petitioner indicated that "[t]he parties wish to proceed with a ruling on the record[,]" *see* Joint Status Report (ECF 66), and so the Chief Special Master addressed entitlement without a hearing.

The Chief Special Master found that Petitioner had failed to prove causation under *Althen* prongs one and three. *See* Entitlement Decision at 25.

On the first *Althen* prong, the Chief Special Master determined that Dr. Merrill failed to demonstrate that flu vaccines could likely cause AIHA. Entitlement Decision at 24. He found that Dr. Merrill relied primarily on (1) "passive surveillance reports of anemia occurring temporally after receipt of a vaccine," (2) "[t]he possibility … that AIHA is underreported as a vaccine-associated adverse event," and (3) "the fact that much about AIHA's pathogenesis remains unknown." *Id.* at 23–24. He characterized the resulting causation theory as "thin, constructed of the kinds of arguments seen all too often in Program cases and yet rejected." *Id.* at 24.

Although Dr. Merrill had presented several "possible mechanisms" for vaccine causation of AIHA, Entitlement Decision at 8 (emphasis omitted), the Chief Special Master found that the government's expert had presented a more detailed explanation for why causation was not likely, *see id.* at 24. As the Chief Special Master summed things up, "[i]t is certainly not beyond the realm of possibility that the autoimmune attack at the heart of AIHA *could* be vaccine-associated, but the evidence necessary to find that contention preponderantly established has not been offered *in this case*." *Id.*

On the third *Althen* prong, the Chief Special Master determined that the onset of Petitioner's symptoms was too early to be within the medically acceptable causal timeframe. *See* Entitlement Decision at 22–23. He found that Petitioner's medical records showed that his AIHA-related symptoms began on the same day he received the flu vaccine. *See id.* at 22 (citing Ex. 1 at 2–6, 10). He further found that the abnormal results of the blood tests conducted five days later corroborated "that Petitioner's AIHA likely was already occurring." *Id.*

"[I]t is not likely," the Chief Special Master found, "that any autoimmune disease process could begin so quickly." Entitlement Decision at 22–23. He further found that Dr. Merrill's opinion did not establish that AIHA could develop "post-vaccination in a comparably-fast timeframe," or "any other pathogenic mechanism in which onset of symptoms … could happen so fast[.]" *Id.* at 23.

Because he had found that Petitioner did not carry his burden on the first and third *Althen* prongs, the Chief Special Master declined to make a formal finding as to the second *Althen* prong. *See* Entitlement Decision at 24–25. Some of Petitioner's medical providers had suggested the vaccine as a cause. *Id.* at 24. In addition, although the government's expert had suggested Petitioner's prior sarcoidosis diagnosis as a possible alternative cause for Petitioner's condition, Dr. Merrill had argued — "accurately," in the Chief Special Master's view — that "this possible alternative cause was not fully corroborated by the record." *Id.* at 24. Rather than make a finding one way or another, the Chief Special Master observed that Petitioner's failure to establish the first and third *Althen* prongs was "a sufficient basis for denying entitlement." *See id.* at 25 (citing *Dobrydnev v. Sec'y of Health & Hum. Servs.*, 566 Fed. App'x 976, 980 (Fed. Cir. 2014)).

The petition for review followed.

## **<u>DISCUSSION</u>**

Petitioner objects to the Chief Special Master's decision on several grounds, none of which establishes that the decision was arbitrary or capricious.

To start, he asserts that the Chief Special Master applied a heightened burden of proof on the first *Althen* prong by "demand[ing] literature-specific and quasi-epidemiologic proof that influenza vaccination can cause AIHA." Pet.'s Mot. at 4–5. But the Chief Special Master did not require Petitioner to show anything more than a "reliable medical theory of causation specific to the vaccine and injury in question," the standard for an off-Table case. *Cerrone*, 146 F.4th at 1121 n.3. The Chief Special Master acknowledged that Petitioner was not required to present medical literature or epidemiological studies. *See* Entitlement Decision at 15. Even so, the bar is higher than mere biological plausibility, *see id.* at 16 (citing *Cerrone*, 146 F.4th at 1121), and when the Chief Special Master weighed Petitioner's theory and evidence, he found it inadequate to satisfy the preponderant standard, *see id.* at 23–24. The Chief Special Master thus applied the proper burden of proof.

Next, Petitioner challenges the Chief Special Master's finding that Petitioner's AIHA onset was too early to establish a temporal relationship between the vaccine and the alleged injury. Pet.'s Mot. at 8–9. Petitioner does not challenge the Chief Special Master's specific findings about the dates disclosed by his medical history: namely, that his symptoms developed that day and were confirmed by blood work after less than a week. Entitlement Decision at 23. Instead he tries a shift to a higher level of generality, saying that the record shows "symptoms beginning shortly after vaccination and objective AIHA confirmed by day five." Pet.'s Mot. at 8. That "record-based temporal sequence," he says, makes "the timing question … a disputed medical issue that should not have been converted into a near-dispositive bar." *Id.* at 8–9.

The point of the Chief Special Master's reasoning, of course, was to resolve that dispute against Petitioner. And vague generalizations about symptoms appearing "shortly after vaccination" are no answer to the Chief Special Master's finding that they appeared *too* soon to be related. *Compare* Pet.'s Mot. at 8, *with* Entitlement Decision at 22–23. To challenge the Chief Special Master's findings, Petitioner would have to show they have no rational basis in the record, *see, e.g.*, *Jordan v. Sec'y of the Dep't of Health & Hum. Servs.*, 38 Fed. Cl. 148, 150 (1993) (citing *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 21 Cl. Ct. 345, 348 (1990), *aff'd*, 970 F.2d 863 (Fed. Cir. 1992)), but Petitioner has done no such thing.

Petitioner's remaining substantive objections are puzzling, because they object to findings the Chief Special Master did not make at all. He argues that the Chief Special Master unfairly discounted Dr. Merrill's report due to his specialization in hematology and oncology, but he does not identify any such credibility finding in any part of the Entitlement Decision. *See* Pet.'s Mot. at 6. Similarly, Petitioner claims that the Chief Special Master's *Althen* prong two analysis erroneously "elevat[ed] sarcoidosis into a persuasive alternative cause" and "underweighed the actual

medical record." Pet.'s Mot. at 7, 9–10. But as mentioned, the Chief Special Master declined to make any definitive findings on *Althen* prong two. *See* Entitlement Decision at 24–25. To the extent he addressed Petitioner's sarcoidosis at all, he *agreed* with Petitioner that the government's alternative causation "was not fully corroborated by the record." *Id.* at 24. On both counts, it is not clear what (if anything) Petitioner is arguing against.

Finally, Petitioner requests remand for supplementation of the administrative record with the report of the expert he engaged after Dr. Merrill withdrew. Pet.'s Mot. at 10–11. He claims that because he had expressed an intention to obtain another expert, he deserves an opportunity to present that expert now that the Chief Special Master rejected Dr. Merrill's causation theory.

That is absurd. Petitioner does not argue that the Chief Special Master erred in his case management, and he acknowledges that he was given "the opportunity to determine how to proceed after Dr. Merrill became unavailable." Pet.'s Mot. at 11; *see also* RCFC App. B, Rule 8(b)(1); *id.*, Rule 3(b)(2); *Dickerson v. Sec'y of Dep't of Health & Hum. Servs.*, 35 Fed. Cl. 593, 598 (1996) ("[T]he Court of Federal Claims has promulgated rules of procedure for use by special masters governed by the principles of fundamental fairness to both parties."). Petitioner instead chose to waive his opportunity to present another expert and to proceed with Dr. Merrill's report, without a hearing.

Parties are ordinarily held to their strategic choices, especially to their decisions to waive procedural opportunities. *See United States v. Cook*, 432 F.2d 1093, 1101–02 (7th Cir. 1970) ("Where parties … knowingly and deliberately turn down a course of procedure which at the time appears to be to their best interest, they cannot be permitted at a later time after a decision has been rendered adverse to them, to obtain a retrial according to the procedure which they had voluntarily discarded and waived.") (citing *Carruthers v. Reed*, 102 F.2d 933, 938 (8th Cir. 1939)). If a party's waiver nonetheless reserves an opportunity to seek a do-over after Plan A goes badly, it is meaningless. Petitioner presents no authority to the contrary. Having made his litigation choices as well as he could — and in the absence of anything arbitrary, capricious, or fundamentally unfair — he must live with the outcome.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for review is **DENIED**. The decision of the Chief Special Master is **SUSTAINED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge